UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LUANNE WAGNER,<br><br>　　　　Plaintiff,<br><br>v.<br><br>LYNDHURST BOARD OF EDUCATION, LYNDHURST POLICE DEPARTMENT, JAMES CORRINO, SUSAN ROBE, ELBA CASTROVINO, SHAUNA DeMARCO, ROBERT JANKOWSKI, and DETECTIVE X,<br><br>　　　　Defendants. | Civ. No. 17-10073 (KM) (SCM)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, LuAnne Wagner, alleges that she was arrested and imprisoned under false pretenses, that her purse was unlawfully seized and searched, and that she was then unlawfully retaliated against for taking leave pursuant the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. 2601, *et seq.* She brings claims against her employer, the Lyndhurst Board of Education ("LBOE"), and the Lyndhurst Police Department ("LPD"), as well as several employees of both entities. Defendants, LBOE, James Corrino, Susan Robe, Elba Castrovino, and Shauna DeMarco (*i.e.*, the school-related defendants), have moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint. For the reasons stated in this opinion, I will deny their motion to dismiss.

I.  **Background**[1]

Ms. Wagner is a tenured teacher of special education with the LBOE. (Cplt. ¶ 5.) In August 2015, her husband unexpectedly passed away. (*Id.* ¶ 14.) Though still grieving, she returned to work. (*Id.* ¶ 15.) Around lunchtime on October 29, 2015, Ms. Wagner was overcome by this grief and started to cry in the main office of the school. (*Id.* ¶¶ 13, 16.) She was asked questions by Susan Robe, the school nurse, who "took issue" with the medication prescribed by Ms. Wagner's physician. (*Id.* ¶¶ 6, 18.) Ms. Wagner then heard sirens and realized that the school had contacted the police in response to her behavior. (*Id.* ¶ 20.) Multiple police cars arrived, and the school was placed on lockdown. (*Id.* ¶ 55.) She asked to be allowed to go to her parents' house, which was right across the street from the school, to take time to recover. (*Id.* ¶¶ 21–22.) Ms. Wagner left the main office and was walking on the sidewalk when the LPD officers stopped and detained her. (*Id.* ¶ 24.)

The staff at LBOE, including the school nurse and Elba Castrovino, the school principal, told the LPD that Ms. Wagner was "in the fetal position in a closet" and that she was "suicidal." (*Id.* ¶¶ 7, 25.) They also told the LPD that she was under the influence of some drugs. (*Id.* ¶ 25.) Ms. Wagner contends that these statements were false. (*Id.*) After Ms. Wagner was detained, the officers searched her purse without her permission. She was taken to the police station, where she was held for an hour. (*Id.* ¶¶ 26–27.) She was "very upset" and was "passing out" because she was in a state of shock due to "the

---

[1] Ms. Wagner's allegations in her complaint will be assumed to be true for the purposes of this motion to dismiss. Record items cited repeatedly will be abbreviated as follows:

| | |
|---|---|
| Cplt. = | Complaint (ECF no. 1) |
| Def. Br. = | Brief in Support of Motion to Dismiss for Failure to State a Claim in Lieu of an Answer (ECF no. 9) |
| Pl. Opp. = | Brief in Opposition to Motion to Dismiss (ECF no. 13) |
| Def. Reply = | Reply Brief/Letter to Opposition to Motion (ECF No. 15) |

2

unjustified and surreal detainment." (*Id.* ¶ 28.) Her mother then arrived at the police station but had to wait 15 minutes before being allowed to see her. (*Id.* ¶ 29.) Ms. Wagner asked if she was free to leave but was told that she was not. (*Id.* ¶ 30.) Instead, she was told that she must go to the hospital. (*Id.*) Upon arrival at the hospital, medical staff examined Ms. Wagner and quickly determined that she was not a danger to herself or others, after which they released her. (*Id.* ¶¶ 31–32.)

Following the incident, Ms. Wagner was told by LBOE that she had to participate in a "fitness for duty" evaluation, which cost her $1,000. (*Id.* ¶ 33.) At some point (the date is unclear), Ms. Wagner took an FMLA leave of absence and returned to work in February 2016. (*Id.* ¶ 34.) Upon her return, Ms. Wagner deemed to have used up all her saved sick days. (*Id.* ¶ 35.) She states that this was not done to another employee who took administrative leave. (*Id.*) She also says that she was taunted by her coworkers and was the subject of gossip daily. (*Id.* ¶ 38.) On May 3, 2016, Ms. Wagner was informed that her teaching assignment in the resource room was assigned to someone else for the following school year and that she would be assigned to a more onerous position. (*Id.* ¶ 40.) The stated reason for the reassignment was that she had the most experience and was the most appropriate choice for the position. (*Id.* ¶ 41.) Ms. Wagner believes that the person who replaced her in her previous assignment, however, had adequate experience and could have been placed in the position she now holds. (*Id.* ¶ 42.) In this new position, Ms. Wagner has been physically assaulted by a student and has been put into a "very difficult classroom situation." (*Id.* ¶ 43.) Ms. Wagner sees all of these actions as punishment for her taking FMLA leave. The goal of the LBOE, she says, was to torment her into retirement. (*Id.* ¶ 46.)

Ms. Wagner now sues many of the entities and people involved in the October 29, 2015 incident and the alleged post-FMLA-leave retaliation. She makes several claims against the defendants: Deprivation of Liberty under 42

U.S.C. § 1983 (Count I); Civil Conspiracy under § 1983 (Count IIa);[2] False Imprisonment under § 1983 (Count IIb); Unlawful Search under § 1983 (Count III); Deprivation of Property under § 1983 (Count IV); Violations of the New Jersey Civil Rights Act ("NJCRA"), N.J.S.A. 10:6-2(c) (Count V); Violations of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.* (Count VI); and Unlawful Retaliation under the FMLA (Count VII). Only Counts I, IIa, IV, V, VI, and VII pertain to the school-related defendants who have brought this present motion to dismiss.

The defendants have moved to dismiss on several grounds. First, they argue that Counts I, IIa, IV, and V fall outside the Statute of Limitations. (Def. Br. at 8.) Second, they argue that Ms. Wagner has failed to comply with the notice provisions of the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. 59:1-1, *et seq.*, for Counts I and IIa. (Def. Br. at 11.) Finally, they argue that Ms. Wagner has failed to allege sufficient facts to satisfy the elements of the causes of action for Counts VI and VII. (Def. Br. at 14.)

## II.  Discussion and Analysis

### a. Standard on Rule 12(b)(6) motion

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and

---

[2]  In the complaint, two of the counts are listed as "Count II." I have relabeled these counts as "Count IIa" and "Count IIb."

4

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

"Under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense to an action. Under the law of this and other circuits, however, the limitations defense may be raised on a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). If the time bar is not apparent from the face of the complaint, "then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.*

### b. Compliance with the NJTCA (Counts I & IIa)

The New Jersey Tort Claims Act governs tort claims against public entities and public employees of the State of New Jersey. Both are immune from tort claims unless another provision of the Act provides liability. N.J.S.A. § 59:2-1. Liability may arise where an injury is proximately caused by an act or omission of a public employee within the scope of his or her employment. *Id.* § 59:2-10. However, before liability arises, a person seeking to assert such a tort claim must within 90 days of the accrual of the claim provide notice thereof, including "the name and post office address of the claimant; [t]he post-office address to which the person presenting the claims desires notices to be sent;

[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; [a] general description of the injury, damages or loss included so far as it may be known at the time of presentation of the claim; [t]he name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and [t]he amount claimed as of the date of presentation of the claim, including estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed." *Id.* § 59:8-4, 10; *see also Evans v. Gloucester Twp.*, 124 F. Supp. 3d 340, 354 (D.N.J. 2015) (stating that the notice requirements of the NJTCA apply to intentional torts committed by public employees). The NJTCA contains a provision that allows for late notice of a claim, at the discretion of the judge, upon the presentation of "extraordinary circumstances" for the failure to file a timely notice of claims. *Id.* § 59:8–9.

Here, the complaint contains no reference to the filing of a NJTCA notice of claim, and no allegations of extraordinary circumstances that would allow for the filing of a late notice. Defendants argue that Count I and IIa should therefore be dismissed for failure to provide such notice.

Neither of those counts, however, asserts a tort claim within the meaning of the NJTCA. Rather, both of those counts assert claims under a federal civil rights statute, 42 U.S.C. § 1983. It is clear that the NJTCA's notice provisions do not apply to claims under Section 1983. *Tucker v. Ann Klein Forensic Ctr.*, 174 Fed. App'x 695, 698 (3d Cir. 2006) (citing *Schneider v. Simonini*, 163 N.J. 336 (2000)). Therefore, whether Ms. Wagner's compliance, or not, with the NJTCA's notice provision is irrelevant.[3] I will deny the defendants' motion to dismiss Counts I and IIa based on failure to provide notice under NJTCA.

---

[3] Defendants do not address the issue of notice under NJTCA and § 1983 in their reply brief and instead state that "[w]hile Plaintiff characterizes the allegations in Counts I and [IIa] as Section 1983 claims, she fails to identify anywhere in her Complaint any federal statutory or constitutional basis for those claims." (Def. Reply at 5.)

6

### c. Statute of Limitations (Counts I, IIa, IV & V)

The defendants initially argued that Counts I, IIa, IV, and V all fell outside the two-year statute of limitations for such claims and are thus time-barred. (Def. Br. at 8.) These counts solely concern the events on October 29, 2015, when Ms. Wagner was arrested and detained by the police. (*See* Cplt. ¶¶ 16, 27.) The unsigned complaint is dated October 28, 2017, but was not recognized as filed on the Court's CM/ECF System until October 30, 2017. (*See id.*) Ms. Wagner explained that October 29, 2018 fell on Sunday and the Federal Rules of Civil Procedure allow for a plaintiff to file a complaint on the next day that is not a Saturday, Sunday, or legal holiday, which in this case would have been October 30, 2017. (Pl. Opp. at 1.) Defendants have conceded the point. (Def. Reply at 1)

The motion, insofar as it seeks to dismiss Counts I, IIa, IV, and V as time-barred is therefore denied.

### d. NJLAD (Count VI)

Count VI alleges that Ms. Wagner was perceived to be suffering from depression by the LBOE and its staff. (Cplt. ¶ 96.) She also alleges that she was discriminated against on the basis of her age. (*Id.* ¶ 101.) Defendants respond that Count VI fails to articulate a factual basis sufficient to state a cognizable cause of action under the NJLAD. (Def. Br. at 14.) Specifically, they argue that

---

I need not consider arguments raised for the first time in a reply brief. At any rate, these counts appear on their face to allege a § 1983 claim. The complaint describes a specific incident that resulted in an arrest by LPD and alleges that defendants, under color of law, conspired and caused these events to happen. (Cplt. ¶¶ 52–54, 60–65.) She asserts legally viable theories of false imprisonment ("deprivation of liberty") and civil conspiracy. *See, e.g., James v. City of Wilkes-Barre*, 700 F.3d 675, 682–83 (3d Cir. 2012) ("To state a claim for false imprisonment, a plaintiff must establish: (1) that she was detained; and (2) that the detention was unlawful. A false imprisonment claim under § 1983 which is based on an arrest without probable cause . . . is grounded in the Fourth Amendment's guarantee against unreasonable seizures." (citations omitted)); *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 646 (D.N.J. ) (noting that a plaintiff can prove cause of action for civil conspiracy by showing that two or more co-conspirators reached an agreement for the purpose of depriving constitutional rights).

7

Ms. Wagner "does not claim any loss of salary or other monetary harm as a result of the transfer, nor that it was a demotion." (*Id.* ¶ 14.)

The elements of a prima facie case of discrimination under NJLAD are (1) the plaintiff belongs to a protected class; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions. *El-Sioufi v. St. Peter's Univ. Hosp.*, 329 N.J. Super. 145, 167 (App. Div. 2005) (citing *Maher v. N.J. Transit R.O. Inc.*, 125 N.J. 455, 480–81 (1993)). Among the protected classes under the NJLAD are age and the mental disability of depression. *Young v. Hobart West Grp.*, 385 N.J. Super. 448, 458 (App. Div. 2005) (applying NJLAD to an age discrimination case); *Steinberg v. Univ. of Med. & Dentistry of N.J.*, No. L-1305-02, 2005 WL 3338271, at *3 (App. Div. Dec. 9, 2005) ("Depression is a disability recognized under the LAD."); *Cowher v. Carson & Roberts*, 425 N.J. Super. 285, 296 (App. Div. 2012) ("[A] perceived characteristic . . . , if genuine, would qualify a person for the protections of the LAD . . .").

Defendants' main point of contention is whether Ms. Wagner has alleged an "adverse employment action." They note that she "does not claim any loss of salary or other monetary harm" and that "she merely claims that she was reassigned within her job title . . . to a subjectively less desirable, different classroom." (Def. Br. at 14.) Under NJLAD, an "adverse employment action" is not limited to monetary harms, such as a reduction in wages, but can also include noneconomic harms. *Victor v. State of New Jersey*, 401 N.J. Super. 596, 616 (App. Div. 2008) ("We can conclude that an employer's adverse employment action must rise above something that makes an employee unhappy, resentful or otherwise cause an incidental workplace dissatisfaction. Clearly, actions that affect wages, benefits, or result in direct economic harm qualify. So too, noneconomic actions that cause a significant, non-temporary adverse change in employment status or terms and conditions of employment would suffice."). Here, Ms. Wagner alleges that she was move from her usual

8

special-needs assignment to a classroom with violent students. (Cplt. ¶ 40, 45.) She specifically asserts that this assignment was "more onerous" and had the result of "torment[ing]" her. (*Id.*) These allegations, if true, rise above mere unhappiness, resentment, and workplace dissatisfaction; they suggest a significant, non-temporary adverse change in Ms. Wagner's employment. *See Pray v. N.J. Transit, Inc.*, No. L-4107-11, 2014 WL 684592 (App. Div. Feb. 24, 2014) (recognizing that reassignment to a more arduous and less desirable duties has been found to constitute an adverse employment action). Therefore, I find that Ms. Wagner has sufficiently alleged an "adverse employment action" under NJLAD.

### e. FMLA Retaliation (Count VII)

Ms. Wagner alleges that she took medical leave following the incident on October 29, 2015, and that upon her return, defendants required her to attend a "fitness for duty" evaluation (which cost Ms. Wagner $1,000). The defendants then allegedly reassigned her to a less desirable teaching position, and removed her accrued sick days. (Cplt. ¶¶ 23, 33–35, 40.) These actions, which did not befall other employees who have taken leave, are alleged to have been taken in retaliation for Ms. Wagner's having taken leave under the FMLA. (*Id.* ¶ 109.) As with the NJLAD claims, defendants argue that Ms. Wagner has failed to allege an "adverse employment action" under the FMLA. (Def. Br. at 20.)

"To prevail on a retaliation claim under the FMLA, the plaintiff must prove that (1) she invoked her right to FMLA-qualifying leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 301–02 (3d Cir. 2012) (citations omitted). An "adverse employment decision" under the FMLA is an decision that is "so intrusive that it affect[s the] compensation, terms, conditions, or privileges of employment." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 235 (D.N.J. 2015) (finding that "close tracking" of an employee's attendance did not constitute an "adverse

employment decision" even if such tracking led to plaintiff's counseling shortly thereafter).

The removal of the sick days and the reassignment to a less desirable classroom sufficiently constitute an "adverse employment decision" on the part of defendants. Ms. Wagner alleges that is was not LBOE's practice to remove sick days when a teacher would take leave. (Cplt. ¶ 35.) These sick days have value to Ms. Wagner (in her complaint, she states that these accrued sick days would have translated to $24,000). (*Id.* ¶ 23.) Also, as explained in the NJLAD section, Ms. Wagner's reassignment to the other teaching position represent a significant change in her conditions of employment. *See supra* Section II.d. Therefore, I find that Ms. Wagner has sufficiently alleged an "adverse employment decision" under the FMLA and will deny defendants' motion to dismiss County VII on those grounds.

### III. CONCLUSION

For the reasons stated above, I will deny defendants' motion to dismiss Ms. Wagner's complaint under Fed. R. Civ. P. 12(b)(6).

An appropriate order shall be filed.

Dated: August 3, 2018

_____
Kevin McNulty
United States District Judge